May it please the Court, my name is Julia Height and I represent Appellant Mr. Aguirre I would request at the outset that I have three minutes rebuttal time? Yes. Thank you very much. You may have. I'm going to raise two issues hopefully by this argument, the withdrawal from the conspiracy issue and also the predicate act regarding the underlying profiteering statute issue. Now it is understood that the courts have taken a very rigid position regarding what it takes for a defendant to withdraw from a conspiracy even after that defendant is incarcerated. This case we submit demonstrates how seriously flawed from a constitutional perspective these holdings are. Counsel, excuse me, you've attempted to raise a constitutional challenge here. Was that constitutional challenge raised in the district court? Not in so many words, no. It wasn't raised here? It's really a plain error standard. Okay. So how can it be raised here? It can be raised I believe by the plain error standard because on its face these instructions that the court gave to the jury regarding withdrawal instructions are so constitutionally defective that I think that this is an issue the courts must address. In fact, none of the issues that I am addressing here have really been addressed by any court, be it the Supreme Court or any federal court. Did you object to those instructions in the trial court? It was an objection to the instruction. And what was the stated basis for the objection? Well, Your Honor, that is unclear because what has happened is that the court tendered its instruction to the respective counsel and on the record it says that counsel objected to a certain sentence being taken out of the court's charge. But as the prosecutor acknowledges, we don't know on that record what that statement was. So I submit that the record is indeed unclear as to what counsel requested, what was given and what was not given and what the objection clearly was. And now on appeal are you objecting simply to one sentence in that charge or the entire charge? No, we're objecting to the entire charge as I will demonstrate. First, the court's instruction to the jury regarding withdrawal stated that one way that Aguirre could prove his withdrawal if he made a full confession to the authorities. This instruction clearly undermines a defendant's Fifth Amendment privilege against self-incrimination. Why? Do you deny that that instruction is legally correct? A defendant who makes a full confession to the authorities in a timely manner can be deemed to have withdrawn from a conspiracy. Then why go to trial? That's not the question, why go to trial. Is that instruction legally incorrect? It is constitutionally deficient. Is it legally incorrect? Yes, Your Honor. Okay, why? It is legally incorrect because it really offends against the dictates of the Fifth Amendment. It compels, it presents what is called a Hobson choice which the Supreme Court over 50 years ago has condemned. It meant I'm going to take one constitutional right and in order to take advantage of this constitutional right I have to forfeit another constitutional right. Counsel, your client never made a full confession. I don't know why you are arguing that point to us on this record. But there was evidence in the record that he in fact continued to direct crimes on behalf of MS-13 of which he was a leader in Massachusetts during the period of his incarceration. So are you arguing the evidence was insufficient in the face of that evidence? What I'm arguing, Your Honor, is that the jury had to make this determination with respect to whether the defendant or not did anything with respect to the MS-13 enterprise. While he was incarcerated, the evidence was clearly, clearly ambiguous. Okay, so your argument is that as a matter of law the evidence did not meet the reasonable doubt standard. Is that it? Your Honor, my position is, and this is another problem with the court's charge, you mentioned respectfully the reasonable doubt standard in the Smith v. United States case. Why would you answer my question rather than change it? The reasonable doubt standard doesn't apply to a withdrawal of defense. So I do not think that the defendant was involved. But you're arguing insufficiency of the evidence. I'm trying to figure out exactly what your argument is. My argument is not necessarily insufficiency, but that there were sufficient facts on the record for the jury to have determined that there was a withdrawal by the defendant after his incarceration from the conspiracy. And the idea is that the instruction, therefore, was prejudicial? The instruction was very prejudicial, Your Honor. Because there was enough evidence that the jury could have found withdrawal had it not been instructed? Yes, Your Honor. Okay, so then that goes back to the question of whether the instruction on withdrawal was legally flawed. That's exactly right, Your Honor. And what, since you can see we're on plain error, what is the precedent that makes clear that the instruction was flawed with respect to withdrawal? Well, Your Honor, that is the problem here. There really is no clear case. How can then there be a clear error with respect to the instruction? That's what I'm trying to figure out. You need to show that it was clear the instruction was flawed. Well, Your Honor, I think that, number one, with respect to saying, and I think that this is why the courts have to revisit this issue, that a defendant, in order to withdraw, must fully confess to the authorities as one condition. The thing that's odd, though, about a plain error argument in which we have to revisit something, the idea is that when it's plain error, there's nothing to revisit because it's already clear that it's wrong. Well, Your Honor, yes, but it is wrong. I know, but why is it clearly wrong? It's clearly wrong because the other aspect of it is the standard of proof, the preponderance of evidence, as opposed to reasonable doubt. There was no instruction regarding preponderance of evidence. In fact, in the withdrawal charge itself, there were the words reasonable doubt. So the jury could have inferred improperly that the burden of the so-called, whether it's an affirmative defense or not, was not by the preponderance of evidence, which is the proper standard according to the Supreme Court, but by a reasonable doubt. That is clear. But there were no objections to the use of the term reasonable doubt or to any of the wording that was given. The only objection was to the omission of some sentence that we don't know anything about. Yes. So you can't reinvent this case on appeal. Plain error requires that we can look at this and see an obvious error. We've got an instruction here that is, as far as I can tell, absolutely in accordance with at least four or five decided cases from this court and a couple of decided cases from the Supreme Court on conspiracy and withdrawal. Yes, Your Honor. So how can it be plain error when you can't cite a single precedent holding the other way? Well, Your Honor, I can claim plain error when it's my position that none of the issues that I'm raising herein have actually been raised in any of these other circuit courts. There has been no Fifth Amendment claim. There has been no preponderance of evidence claim. And the other aspect of this is, you know, well, the defendant has to communicate directly to his co-conspirators and he's going to withdraw. There is nothing in any case, federal or the Supreme Court, how do you do that? The district court never said that, though. The district court said that was one way in which you could withdraw. Not that the defendant had to. No, it was either confess or communicate to the co-conspirators. How does he do that? Does he write a letter from prison? No, it wouldn't happen. The prosecutor has introduced evidence from a government witness. Well, in El Salvador, MS-13 members run the enterprise from prison. Are we saying that our federal prisons run the same way as in El Salvador? So you're saying the instruction expressed to give only those two routes? Yes, Your Honor. And didn't give them as examples? No. And on your view, what is the other route that it's clear was available to show suspicion? You know what, Your Honor? When a defendant is incarcerated, the other route, and I raise this in my brief, and it has not been raised anywhere, that perhaps the law should be that when a defendant is arrested and charged with any type of conspiracy, not just this racketeering conspiracy, and he's assigned a lawyer or he retains a lawyer, then it should be the burden on the lawyer or even the prosecutor to give a note to the defendant. Hey, you want to withdraw from the conspiracy? Putting that aside, is there some other route that you think it is clear that would qualify under existing precedent as withdrawal, that the instruction didn't include, and that your defendant, the facts would show, did enough that it would have been prejudicial not to have instructed the jury about that possible route for withdrawal? I would say that there was a route if the defendant was still in society. You seem to be arguing for a per se rule. Correct. You seem to be arguing for a per se rule that upon arrest and imprisonment, that constitutes withdrawal. I would like that. I think there should be an automatic rule. I don't think there should be a presumption, and there seems to be an automatic presumption, which I think offends against Leary and other cases that are involved with this. And I really, and in this particular case, the defendant did indicate a desire to withdraw. The MS-13 member came up to his girlfriend outside and said, hey, I hear you want us to withdraw from the conspiracy. And she said, yes, but, you know, he loves him and he regards him as his family. Of course she's going to say that. If she didn't say that or he didn't cover the basis, he would be killed in prison. Everybody kind of knows that. This is what happens with MS-13. He would be in danger for as long as he's imprisoned. So I think that what the standards are today are so unrealistic, and I know that these issues have not been raised by the courts and have not been raised before, but on its face, this instruction is so flawed. What about the evidence that he gave instructions to have someone murdered while he was in prison? The evidence is very unclear. It's ambiguous. It's so ambiguous. And the jury could easily have taken it to state exactly what I said. I don't think the jury could really have clearly considered that if they weren't able to consider the withdrawal offense just because the government witnesses said themselves that the defendant didn't have knowledge of six murders that they knew of. Those were other murders than the one I'm talking about. Claiming? Those were different murders than the one, the attempted murder I'm talking about, and it was only because law enforcement got wind of it that the victim was able to escape being murdered. And the victim in that particular case said it was not the defendant who wanted him dead but another man named Crazy because he ratted on his brother. So, I mean, this is where the record stands. It is cloudy, but the instruction he gave was very clear. Okay, counsel, you've reserved three minutes. Thank you. Proceed. Thank you, Your Honor. May it please the Court, good morning. Kunal, best regards to the United States. I want to start off with the withdrawal issues and in particular address some of the questions that the panel asked to counsel. First, I believe, Judge Lynch, you asked, what was the stated basis for the objection below? The direct quote at the end of the instructions on withdrawal, which is where it would have been the timely point to make that objection, was, quote, I object to the failure to use the withdrawal instruction. There's nothing in the record, and frankly that can't be, there was nothing underlying suggesting the defendant actually proposed his own instruction that the district court refused to give. This is separate from the first issue where there was a proposed instruction on the elements of RICO. Well, what did that objection mean, to use the withdrawal instruction? I think what that was referring to was that a prior draft of the district court's withdrawal instructions had an added sentence, and the court in its finalization of that erased that one sentence, which, again, did not really get to the crux of the issue being raised here. How do we know? I'm sorry? Do you know what that sentence was? I don't believe that's clear in the record. So how do we know it didn't get to the crux of it? Well, fair enough. I guess what I would say is it did not change anything. There was a deletion of one sentence. It depends what it would say. Fair point, Your Honor. I guess what I would say, though, is. So putting aside that, could you just, the representation from your opponent was that the instruction gave only two routes by which withdrawal could occur. Is that accurate? That is not accurate. The instructions are in the appendix, page 129. I direct the court to that. And if I may quote from that, the court correctly, and I would say a lot of this language came directly from the Supreme Court's decision in Smith, so there can be no error. The district court quite literally was quoting the Supreme Court in much of this instruction. But the quote, the instruction was, In order to withdraw from the conspiracy, a conspirator must act affirmatively to either defeat or disavow the purposes of the conspiracy. Typically, that requires either a concession. And that quote then goes on. Typically makes clear the court is not putting some hops and shoes before this defendant. I also think it's important to look at the factual background of the Smith decision, where the Supreme Court laid out the law of withdrawal. What's notable about that is, in Smith, the defendant had been incarcerated for six years. The statute of limitations is fine. There was a far more compelling argument that he'd been imprisoned for the entirety of what would have been the lapse in the statute of limitations. And certainly the suggestion that, well, no one's raised this argument about how could you from jail really disavow the conspiracy, that's squarely presented in Smith, because in Smith, the argument is not only had he withdrawn, but the statute of limitations had elapsed. And the court goes on to say it doesn't matter if he'd been in for six years. You have to make some affirmative, take some affirmative steps to disavow the conspiracy. And there and here, there wasn't. So I raise that because, frankly, we can't really get past step one of the plain error review, because there was no error, plain or otherwise. And I think that itself is fable under the standard of review. What was the evidence that he continued as a conspirator after his arrest and imprisonment? I think, as Your Honor noted earlier, there was evidence from some witnesses that he was giving orders for people to kill. CW2, Christian Henriquez, our clacker, when he testified, he himself talked about the rules of the gang. And for someone to have green-lighted him, his leader, the clique leader, Tremendo or Leonardo Gary, would have to give that order. And importantly, Leonardo Gary's longtime partner and the mother of his child, Vicky Martinez, testified that, notwithstanding some secondary mention of him perhaps wanting to leave, he said, referring to Tremendo, that the gang was his family and he would never leave. I think that's also important because it negates this, it's not really a factual impossibility defense, but it's this notion that how could anyone possibly have ever withdrawn? If that testimony was different, there is an alternate universe where the facts would have supported a withdrawal instruction. The partner could have said, you know, he got arrested, and then when I visited him in jail, instead of saying it was his family, he would never leave, he told me, I've now seen the light. I want nothing to do with this. I want out. The evidence could have come in any number of ways, suggesting that once he was in jail, he had withdrawn from the conspiracy. That's not what the facts showed. That's not what the evidence showed. I'd also want to highlight one tangential point, but it's important. It's incorrect to suggest, as the appellant does in the briefing, that had the withdrawal argument had more merit or been adopted, it would have somehow prevented the government from presenting evidence of post-withdrawal conduct. That is not correct, and the reason I highlight that is it ties into the first issue, which I'll get to next. But it's a failure to recognize that the evidence the government is admitting, even if it's post-arrest or, in the defendant's view, post-withdrawal, is relevant to other issues. It's relevant to enterprise. It's relevant to the pattern of racketeering. It's relevant to intent. Put differently... But the post-conduct would be hard to make relevant to his agreement. I think that's not true. I think it would be relevant to the intent. So, for example, if... I see. The agreement contemplated that occurring later, even though he had been with John. So if five people get together to say, we will commit murder, and then he gets arrested on the way to the first murder, and they go on to accomplish their task, it's completely acceptable and reasonable for the government to relate that back to the intent at the time of the agreement. And that would be important. Similarly, the enterprise would be important. It's important to show that this was a continuing association and fact enterprise, that this individual recruited impressionable young members of MS-13 from local high school, encouraged them to go commit murder, and that enterprise, that association, in fact, continued past his arrest. And that ties into the instruction, which talks about how the enterprise can change members now and then, but there must be some continuity. So I think that's an important point. Turning to the first issue, because I do want to spend some time on that, I think, again, there is a failure, I'd submit, to recognize the import of the binding Supreme Court precedents in front of court. And I say that because in Salinas, the court addressed the very issue that the defendant is now raising. And in particular, what's notable about Salinas, which isn't as clear in the briefing, Salinas, the defendant named Salinas, was charged both with substantive racketeering and conspiracy to commit racketeering. He's acquitted of substantive racketeering, convicted of conspiracy, and he challenges it to say, well, I was acquitted, and they didn't prove two or more acts. So it's even a greater threshold because he's acquitted. And the court, in detail, then goes through the elements of recalconspiracy, why there is no requirement to prove two or more acts or agreements to commit acts by the defendant himself, and why, notwithstanding the fact that the government did not prove two or more acts by Salinas himself, he was guilty of recalconspiracy. That, again, is fatal to Leonardo Gary's argument because even in the unlikely scenario that somehow there wasn't evidence of his acts, and here there was compelling evidence, there was a victim who personally identified the defendant who hit him, struck him in the head with a large machete and lived to tell about it. There was a victim who was shot by the defendant who identified him. But even if there wasn't that evidence, and even if a particular instruction had been given for a finding of predicate acts, and even if the jury had not found those predicate acts, the defendant would still be no better than the defendant in Salinas. As long as there's evidence of the agreement. As long as there's evidence of the agreement. And what is the evidence of the agreement? The evidence of the agreement here came... Or is there evidence of agreement? Assume the predicate acts that are challenged as not qualifying as predicate acts by the defendant. Assume the defendant's right about that. And suppose we take them out of the equation for the agreement. Are there nonetheless evidence of an agreement to commit? Yes. And to be part of a conspiracy that would be committing two predicate acts? Yes, there is. And here, what was remarkable about the evidence in this case, this was one of the unusual cases where the jury really got to hear everything from the very start of a conspiracy through the arrest of the conspirators. And what I mean by that is here, the defendant's partner testified not just about how the conspiracy here originated, but how he was an MS-13 leader in El Salvador, a little bit of what that meant, how he was sent by MS-13, which paid for his transport to the United States, how he went to Michigan, how she overheard him talk on occasion with MS-13 leaders, how she then came with him to Massachusetts. And then you have testimony not just from her, but from Christian Henriquez, who recounted incidents, for example, that included how the defendant would encourage them to commit violence, would encourage them to commit murder, who made YouTube promotional and recruitment videos that he would send that talked about murder. Henriquez testified the first time he saw that was at Chelsea High School, how Leonardo Derry comes here, he recruits these individuals, he continues having meetings. There's testimony about some of these meetings. And so all of that is evidence of the conspiracy itself. And because it shows that he joined the MS-13 enterprise. There was something called MS-13, the charged enterprise. He joined that. When he joined that, there was an understanding that two or more members would commit, excuse me, that some member would commit two or more acts. And what are those acts? And here we allege not the acts, but the pattern or the types of racketeering acts. And those are specifically outlined in the indictment. Here there were acts involving murder, acts involving robberies, acts involving drug trafficking, I believe. So the robberies and the drug trafficking makes the fight over whether there was self-defense or not irrelevant in your view. Exactly. Because among other things. Just on this point, in some of the cases there's a suggestion that special verdict forms would be useful in this context. Is there some reason why they're not useful that would lead one to not have them? I just am not. Because there's a unanimity requirement with respect to types of predicate acts. Correct. And so there is that concern that one could see about, you know, when you have that much stuff out there, what is our confidence level that a jury could come to unanimity on types? What I'd suggest is especially when there is that much stuff out there, so to say, any decision that a jury is asked to make that they don't need to make detracts from their ability to focus on the decisions they do need to make. And I think that's an important point here. When the jury does not need to find predicate acts because there is no predicate act requirement, perhaps it may avoid an appeal here or there if they had a special verdict form. But don't they need to find an agreement as to types of predicate acts? They do. And in the instructions, I'm sorry, I don't have the page on my hand, but the district court at great length correctly instructed the jury on that unanimity requirement and went as far as to say you need to agree on which two or more acts.  Is there a reason not to have a special verdict form that would tell us what the jury agreed those types were? Just going forward, I'm just trying to... I don't think so because I think that really is the purview of the district judge at sentencing. I think these are really... How many predicate acts were charged and instructed? There were the three attempted murders. There was the drug trafficking. There was the robbery. That's five. Wasn't there a sixth? In this case, to be hyper-technical about it, there were no predicate acts themselves alleged. How many types of predicate acts were alleged that would be the basis for the jury? I think the jury was instructed on, I believe, at least three categories of predicate acts because RICO talks about any acts involving murder. So the jury, for example, was instructed on varieties of murder, not just one. So depending on how you look at it, they were instructed that they could find any number of acts involving murder, which could be murder or assault with intent to commit murder, et cetera. And they only have to be, in your view, unanimous as to involving murder? Or do they have to be? They need to be unanimous on the types. I don't think the degree or the subcategory matter. Which type is involving murder? Correct. And I think the easiest way to think about it is, have they just stopped without an identifiable victim? In other words, have there been overwhelming evidence, like there is, where they said, we will attack and kill again while there's murder in the record? I get it. I'm asking a slightly different question, which is maybe not directly pertinent to this outcome, but I'm just trying to zinc them forward. With respect to types, when the government charges or asks the jury to consider more than two types of predicate acts, knowing that the jury is going to be instructed they have to be unanimous as to two types, or as to the types. Two or more acts. Acts within a type. Within a type. Correct. So it could be two or more of murder. Is there some reason not to have a special verdict for them that would make sure we knew the type that they were talking about, so they weren't doing cross types? And I submit part of it is, the easiest way to think about it is, I think it's asking the jury to make findings they don't need to make, and I think it really is no different than a drug case, for example, where there are disputes in terms of drug quantities. We don't ask juries to make findings, unless a statutory maximum is being enhanced, on the difference between 5 kilos versus 8 versus 15, and those issues routinely come up. So I think it's akin to that, and is viewed best as sensing that. Thank you. May it please the Court. Let me address the Predicate Act issue. This is not a simple case, as the government argues. The Court expressed that I am confused, the law is convoluted, I feel helpless. The government admitted that this area was right. And then gave you the instruction on lesser included offenses, which you requested. Absolutely. And the government did not object. So you basically got from the district court what you wanted. No, Your Honor, not quite. Because this issue, again, has not been resolved by the courts. There has been no guidance from the courts. I'm sorry, what issue? Salinas is quite clear. Your Honor, we're not allowing Salinas. Articulate exactly what issue you're talking about. Salinas, the defendant, is not saying that these crimes were not committed. He's not saying I did not hit the guy on the head with a machete. He's not saying that I didn't shoot the guy. What he is saying is that there are lesser included crimes, and therefore they are not predicate acts. And there was no charge, or no, in the jury instruction sheet, we have no clue whether the court found these categories of crimes as lesser included crimes. And I would point out that with respect to one of these – You want to say the jury instruction form? Are you saying that there should have been a special verdict, which you never, at trial counsel, never requested? Well, Your Honor, I think that he did request it. I think that there is evidence in the record that he did make a request for specific findings in this particular area. And, you know, I don't have to say right now. Just a minute. Government counsel, is that correct? I think it was in pre-trial proceedings in the – I don't think it was properly preserved at the time of the instruction. All right. But in any event, so that I understand what your position is, you're not objecting to the jury instructions as given. You're now challenging the absence of a special verdict that identified the types of racketeering activity that the jury felt supported the charge. Yes. I thought that's not quite what you were arguing in your brief. I understood you to be arguing that the special verdict form you wanted was not a special verdict form that would delimit types. You wanted findings about acts. That's exactly right, Your Honor. But that's very different than the question of whether there should be a special verdict form as to types. I understand the question. I am saying as to type. As to acts. Yes. Not as to type. That's right. But that's the problem because under Salinas, the acts don't matter. It's the agreement about types. Well, Your Honor, let me just explain in the – Go ahead. Go ahead. In the cases here, this is sort of unusual in this case because the government, in terms of these predicate acts, wasn't just approving or approving categories. They introduced recordings, videos, testimony, exhibits regarding each and every crime in this particular case. And the government, in its summation, dismissed the case and said, you know, the whole summation of the defense counsel didn't matter because we don't have to do anything, despite the fact that we offered all this overwhelming proof. You can find them guilty anyway of the category. And we're saying that's wrong. It's the predicate act. You have to specify where the defendant raised the issue, where there was a lesser included crime, and that the defendant in this case was severely prejudiced in that context. Okay. Thank you. You're now saying what you said in your brief. Thank you. I'll leave. Thank you. Thank you.